**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SCOTT CARTER, | Civil Action No.: 12-2788 |
| Plaintiff, | |
| v. | **OPINION** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | |
| Defendant. | |

**CECCHI**, **District Judge.**

## I.    INTRODUCTION

Scott Carter ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). Submissions made in support of and in opposition to the instant petition have been considered by the Court.[1] The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the decision of Administrative Law Judge Donna A. Krappa (the "ALJ") is affirmed in part and remanded in part.

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. Of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

II.      **PROCEDURAL HISTORY**

A.       **Procedural Background**

Plaintiff applied for Disability Insurance Benefits ("DIB") as well as Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") on May 22, 2007, alleging disability beginning on April 30, 2007.  (Tr. 13, 169.)  Plaintiff's claim was denied on November 19, 2007, as was his request for reconsideration on January 8, 2008.  (Tr. 13, 234-35.) Plaintiff filed a request for a hearing before an ALJ, which was held on April 22, 2010.  (Tr. 88-107.)  In a written opinion dated August 18, 2010, the ALJ determined that the Plaintiff was not disabled.  (Tr. 10-25.)  The Appeals Council denied review, which rendered the decision of ALJ the final judgment of the Commissioner.  (Tr. 1-6.)  Plaintiff initiated the current action in this Court, requesting this Court to either reverse the Commissioner's decision, or to remand this case for reconsideration.  (Pl.'s Br. 1.)

B.       **Personal and Employment Background**

Plaintiff was thirty-nine years old when he first applied for DIB and SSI.  (Tr. 169.)  He completed the General Educational Development ("GED") Test to earn his high school diploma in approximately 1985.  (Tr. 178.)  His prior work experience included building maintenance, manual labor, and working as a package handler.  (Tr. 174.)

The longest job Plaintiff held was in building maintenance.  (Tr. 174.)  He performed this job at two buildings from 1993 to 2006, doing basic maintenance jobs, including buffing floors, sweeping, removing garbage, removing snow, and other related duties.  (Id.)  Plaintiff walked and stood for eight hours; climbed for five hours; stooped, kneeled, and crouched for four hours; handled, grabbed, or grasped big objects and reached for six hours; and wrote, typed, or handled

2

small objects for two hours each day while performing this job.  (Tr. 174-75.)  At the time, Plaintiff was able to lift machinery and cleaning supplies of up to fifty pounds.  (Tr. 175.)

Most recently, Plaintiff attempted to work on a sanitation truck in 2010, within the same month of his hearing.  (Tr. 46-47.)  Plaintiff's friend, Karen Grier Young, testified that Plaintiff was working on the recycling garbage truck doing what appears to be separating out the recyclable materials and placing them into the recycling truck.  (Tr. 48.)  Ms. Young testified that Plaintiff had to move around a lot to perform this job.  (Id.)  However, according to Ms. Young's testimony, one of Plaintiff's coworkers called an ambulance for the Plaintiff on the first day of his work, and on the second day, by noon, the Plaintiff was told not to return to work. (Id.)  Ms. Young further testified that when she went to pick up the Plaintiff at work, he was leaning over, was short of breath, and his legs were swollen and his shoes were off.  (Tr. 49.)

**C.    Medical Background**

On February 12, 2007, Plaintiff visited Dr. Lucyamma Thalody, complaining of swelling in both lower extremities.  (Tr. 221.)  Plaintiff denied chest pains, shortness of breath, nausea, vomiting, or weakness, but did not have a fever at the time.  (Id.)  Dr. Thalody noted that Plaintiff was obese with "massive edema in both lower extremities up to the knee."  (Id.)  Dr. Thalody diagnosed Plaintiff with alcoholism and bilateral edema and advised further testing to be conducted.  (Tr. 222.)  Dr. Thalody prescribed Plaintiff several medications, advised him to elevate his legs, and to go for a reevaluation.  (Id.)  Plaintiff was also advised to stop drinking alcohol and to quit smoking.  (Id.)

Plaintiff returned to Dr. Thalody on May 30, 2007 for a blood test.  (Tr. 208.)  Dr. Thalody diagnosed Plaintiff with superficial phlebitis, hypertension, hypertensive cardiovascular disease, and chronic obstructive pulmonary disease.  (Id.)  A venous Doppler test showed no

blood clots but "chronic venous insufficiency and episode of chronic thrombosis." (Id.) Electrocardiogram test results showed left ventricular hypertrophy. (Id.) Dr. Thalody referred Plaintiff to a podiatrist and a vascular doctor, and advised Plaintiff to wear vascular stockings. (Id.)

Lab results from May 29, 2007 concluded that there was no evidence of deep venous thrombosis or venous insufficiency. (Tr. 216.) However, Plaintiff did exhibit "[d]iffuse wall thickening involving the distal superficial femora veins and suboptimal compressibility of the common and superficial femoral and popliteal veins bilaterally." (Id.) Lab results dated May 31, 2007 showed no pulmonary abnormality. (Tr. 215.) Medical reports by Dr. J. Fernandez from August 8, 2007 indicate that the Plaintiff suffers from hypertension, edema, what appears to be chest pain, and depression. (Tr. 224-25.)

On October 15, 2007, Plaintiff underwent an orthopedic consultative examination with Dr. Allen S. Glushakow. (Tr. 227-28.) Dr. Glushakow did not find evidence of cyanosis, clubbing, or edema, and noted that Plaintiff was able to walk on his toes and heels and he could squat. (Tr. 227.) Dr. Glushakow, however, did find some mild chronic venous insufficiency and hypertension. (Tr. 228.)

On June 29, 2009, Plaintiff underwent an internal medicine consultative examination with Dr. Rambhai C. Patel. (Tr. 237-49.) Dr. Patel noted that the Plaintiff complained of dizziness and pain in both ankles for the last year, which gets worse with standing of more than five to six hours. (Tr. 238.) However, there were no complaints of chest pain, palpitations, or orthopnea, and no change in weight. (Id.) Dr. Patel diagnosed Plaintiff with hypertension, atypical chest pain, peripheral edema in his lower extremities, and noted that the "possibility of peripheral vascular insufficiency cannot be ruled out." (Tr. 239.) Dr. Patel also concluded that

Plaintiff could sit, stand, and walk for up to six hours in an eight hour day, occasionally lift up to twenty-one to fifty pounds, and frequently reach, push and pull. (Tr. 240-242.)

On July 6, 2009, Plaintiff underwent a psychiatric consultative examination with Dr. Vasudev N. Makhija. (Tr. 250-56.) Dr. Makhija noted that the Plaintiff's father recently died and that he became depressed around that time. (Tr. 250.) Plaintiff stated that he had trouble getting up in the morning and had difficulty getting himself ready every day. (Tr. 250-51.) Dr. Makhija came to the diagnostic impression of alcohol dependence in sustained full remission and dysthymic disorder. The doctor also noted a history of COPD, superficial phlebitis, hypertension, and hypertensive cardiovascular disease. (Tr. 253.)

Finally, on March 12, 2010, Plaintiff underwent a second evaluation with Dr. Patel. (Tr. 261-76.) Dr. Patel noted that Plaintiff had suffered from pain in both lower extremities for the last two and a half years and was diagnosed with thrombophlebitis, though with no limping. (Tr. 261.) Plaintiff reported an increase in pain after standing for more than ten to fifteen minutes if not on medication. (Id.) Dr. Patel also recorded that Plaintiff had suffered from hypertension for the past two to three years and experiences dizziness and light headaches. (Id.) Plaintiff further suffered from retrosternal chest pain for the last two years. (Id.) Plaintiff described the pain as sharp without a precipitating factor or radiation, lasting from ten to fifteen minutes, and is relieved by rest. (Id.) He reports such pain every day without associated symptoms like diaphoresis, palpitations, or GI symptoms. (Id.) Finally, Dr. Patel noted that Plaintiff complained of shortness of breath with exertion occurring for the last twenty years. (Id.) Plaintiff reports that if he walks for approximately half a block or climbs one flight of stairs, he feels shortness of breath. However he denies a history of asthma and is not taking medications for it. (Id.) Dr. Patel gave the clinical diagnosis of uncontrolled hypertension, atypical chest

pain, shortness of breath with unknown etiology, noting that the possibility of chronic obstructive lung disease cannot be ruled out, and slight edema in both lower extremities.  (Tr. 263.)

### III.   LEGAL STANDARDS

#### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  It is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder" and must give deference to the administrative findings.  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992); see also 42 U.S.C. § 405(g).  Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence.  Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (footnote and internal quotations omitted).  Substantial evidence is "'more than a mere scintilla. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  Daniels v. Astrue, No. 4:08-cv-1676, 2009 U.S. Dist. LEXIS 32110, at *7 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)).

This Court may not set aside the ALJ's decision merely because it would have come to a different conclusion.  Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).  However, "where there is

conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." Cruz, 244 Fed. App'x. at 479 (citing Hargenrader v. Califano, 575 F.2d 434, 437 (3d Cir. 1978)).  Furthermore, where the opinion from a treating physician is rejected in favor of the opinion of a non-treating physician, the ALJ must adequately explain his reasons and provide the rationale behind his decision. See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).  Given the totality of the evidence, including objective medical facts, diagnoses, medical opinions, and subjective evidence of pain, the reviewing court must determine whether the Commissioner's decision is adequately supported. See Curtain v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).  Generally, medical opinions consistent with other evidence are given more weight, whereas opinions inconsistent with the evidence or with themselves are subject to additional scrutiny against the entire record.  20 C.F.R. § 416.927. Overall, the substantial evidence standard is a deferential standard of review that requires deference to inferences drawn by the ALJ from the facts if they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

**B. Determining Disability**

Pursuant to the Social Security Act, to receive Supplemental Security Income Benefits, a plaintiff must show that he is disabled by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A).  Thus, the plaintiff's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id.

Impairments that affect the plaintiff's "ability to meet the strength demands of jobs" with respect to "sitting, standing, walking, lifting, carrying, pushing, and pulling" are considered exertional limitations.  20 C.F.R. § 404.1569(a); Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).  All other impairments are considered non-exertional.  See Sykes, 228 F.3d at 263.  Decisions regarding disability are made individually and are based on evidence adduced at a hearing. Sykes, 228 F.3d at 262 (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)).  Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3).

The SSA follows a five-step sequential evaluation to determine whether a plaintiff is disabled.  20 C.F.R. § 416.920.  The evaluation will continue through each step unless it can be determined at any point that the plaintiff is, or is not, disabled.  20 C.F.R. §416.920(a)(4).  The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five.  Sykes, 228 F.3d at 263.  Neither party bears the burden at step three. Id. at 263, n.2.

At step one, the plaintiff's work activity is assessed, and the plaintiff must demonstrate that he is not engaging in substantial gainful activity.   20 C.F.R. § 416.920(a)(4)(i).   An individual is engaging in substantial gainful activity if he is doing significant physical or mental activities for pay or profit.  20 C.F.R. § 416.927.  If the plaintiff is engaged in substantial gainful activity, he will be found not disabled and the analysis will stop, regardless of plaintiff's medical condition, age, education, or work experience.  20 C.F.R. § 416.920(b).  If the individual is not engaging in substantial gainful activity, the analysis proceeds to the second step.  At step two,

the plaintiff must show that he has a medically determinable "severe" impairment or a combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii). An impairment is severe when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). It is not severe when medical evidence shows only a slight abnormality or minimal effect on an individual's ability to work. See Leonardo v. Comm'r of Soc. Sec., No. 10-1498, 2010 U.S. Dist. LEXIS 120944, at *9-11 (D.N.J. Nov. 16, 2010). If the plaintiff does not have a medically determinable severe impairment, he is not disabled. 20 C.F.R. §§ 416.920(a)(4)(ii), (c). If the plaintiff has a severe impairment, the analysis proceeds to the third step.

At step three, the ALJ must determine, based on the medical evidence, whether the plaintiff's impairment matches or is equivalent to a listed impairment found in the Social Security Regulations' "Listings of Impairments" found in 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the impairments are the same or equivalent to those listed, the plaintiff is per se disabled. 20 C.F.R. § 416.920(d); Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119 (3d Cir. 2000). At this point, the ALJ must set forth the reasons for his findings. Burnett, 220 F.3d at 119. The Third Circuit requires that ALJ to identify the relevant listings and explain his reasoning using the evidence. Id. Simple conclusory remarks will not be sufficient and will leave the ALJ's decision "beyond meaningful judicial review." Id.

When the plaintiff does not suffer from a listed impairment or an equivalent, the analysis proceeds to step four. At step four, the ALJ must determine whether the plaintiff's residual functional capacity enables him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). This step involves three sub-steps: (1) the ALJ must make specific findings of facts as to the plaintiff's residual functional capacity; (2) the ALJ must make findings regarding

the physical and mental demands of the plaintiff's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether the plaintiff has the capability to perform the past relevant work. Burnett, 220 F.3d at 120. The SSA classifies residual functional capacity and past work by physical exertion requirements ranging from "sedentary" to "very heavy work." See id.; 20 C.F.R. § 404.1567. If the plaintiff can perform his past work, the ALJ will find that he is not disabled. 20 C.F.R. § 416.920(f). If the plaintiff lacks the residual functional capacity to perform any work he has done in the past, the analysis proceeds to the fifth and last step.

At step five, the Commissioner must show that, based on the plaintiff's residual functional capacity and other vocational factors, there is a significant amount of other work in the national economy that the plaintiff can perform. 20 C.F.R. § 416.920(a)(4)(v). During this final step, the burden lies with the government to show that the plaintiff is not disabled by demonstrating that there is other substantial, gainful work that the plaintiff could perform, given her age, education, work experience and residual functional capacity. See Rutherford v. Barnhart, 399 F.3d 546, 551 (3d Cir. 2005); Sykes, 228 F.3d at 263. If the Commissioner cannot show that there are other jobs for the plaintiff in the national economy, then the plaintiff is disabled. 20 C.F.R. § 416.920(a)(4)(iv).

## IV.   DISCUSSION

### A.   The ALJ's Decision

The ALJ followed the required five-step analysis in reaching her decision. (Tr. 13-22.) At the first step, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 30, 2007, the alleged onset of Plaintiff's disabilities. (Tr. 16.) As Plaintiff filed for DIB

and SSI on May 22, 2008, subsequent to the termination of any gainful employment, the ALJ proceeded to step two.  (Tr. 13.)

At step two, the ALJ stated that Plaintiff suffered from two severe impairments: "obesity, and chronic thrombophlebitis."  (Tr. 17.)  The ALJ then proceeded to summarize the Plaintiff's medical history and testimonial evidence from Plaintiff's friend and roommate, Karen Grier Young.  (Tr. 17-19.)

The ALJ went on to conclude at step three that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  The ALJ referred to the testimony of vocational expert Dr. Martin Fechner, who testified at the oral hearing on July 28, 2010, and noted in conclusory fashion that "[i]n Dr. Fechner's opinion, the claimant's impairments did not meet or equal the listings of the Commissioner singly or in combination."  (Tr. 19, 50-53.)  The ALJ then addressed the Plaintiff's argument that there should be additional severe impairment findings based on the pulmonary function test in May of 2007 and the findings of massive edema in February of 2007.  (Tr. 19.)  Once again, relying on Dr. Fechner's testimony, the ALJ stated that "there was nothing in the record at all after June of 2008 to show the claimant's condition . . .  In fact, the pulmonary test results of March 2010 showed the claimant's volume was 2.97, which is almost three times the level that requires a finding of disability."  (Id.)  Then, the ALJ generally stated that although obesity is not one of the specific medical listings, she would consider it "in the context of the overall record evidence in making this decision."  (Id.)

After that, the ALJ proceeded to step four.  She concluded that Plaintiff was capable of:

the exertion demands of a combination of light and sedentary work as defined under the Regulations; specifically, he is able to lift/carry 20 lbs. occasionally and 10 lbs. frequently; stand/walk for 2 hours in an eight hour work day; sit for a total of 6 hours in an eight hour work day (if given the opportunity at the 45-1 hr. mark

to stand and stretch for 3-5 minutes); and perform unlimited pushing and pulling. Furthermore, [the ALJ found] that the claimant is able to perform jobs: that require no use of ladders, ropes, or scaffolds; that require only occasional use of ramp or stairs; that require occasional balancing, stooping, kneeling, crouching, and no crawling; that permit at least three breaks during the workday—each of at least 15 minutes duration; that require no exposure to unprotected heights, hazards or dangerous machinery; that involve no concentrated exposure to undue amounts of dust or known chemical irritants; that are simple, unskilled, and repetitive; that are low stress (that is, these jobs require only an occasional change in the work setting during the work day, only an occasional change in decision making required during the work day, and, if production based, production is monitored at the end of the day rather than consistently throughout it); and that require only occasional contact with supervisors, co-workers, or general public. (Tr. 19.)[2]

The ALJ found that although the record supported the Plaintiff's medically determined impairments, she did not find the Plaintiff's statements regarding intensity, persistence, and limiting effects to be credible to the extent that they are inconsistent with his residual functional capacity assessment. (Tr. 20.)  The ALJ once again relied on Dr. Fechner's testimony, noting that although the Plaintiff is exogenously obese and suffers from varicose veins, the results of a Venus Doppler test showed no insufficiency.  (Id.)  The ALJ also noted that by late 2007 and most recently, in March of 2010, the examining physicians only found minor edema (1+ level out of a possible 4+).  (Id.)  The ALJ further noted that although the Plaintiff's Pulmonary Function Test ("PFT") in 2006 was poor, his PFT performance in March of 2010 was 2.97, almost three times the level required to find disability.  (Id.)  Additionally, in regard to high blood pressure, the ALJ seemed to suggest that if he did not drink alcohol, Plaintiff's high blood pressure would be controlled with medication, although not greatly.  (Id.)[3]  Finally, the ALJ cited

---

[2] The ALJ followed a two-step process: first, she determined whether there existed any physical or mental impairment.  She then assessed whether those impairments could "reasonably be expected to produce the [Plaintiff's] pain or other symptoms," including the "intensity, persistence, and limiting effects" of those symptoms.  (Tr. 20.)

[3] The ALJ stated: "Regarding high blood pressure, the doctor noted that drinking alcohol could make blood pressure poorly controlled.  However, when there is no drinking, the claimant's high blood pressure is not under 'great control' with medication."  (Id.)

Dr. Fechner's testimony that a relatively recent echocardiogram was normal, and that the Plaintiff's hypertension has not caused end organ damage. (Id.)

The ALJ then revisited the Plaintiff's edema, noting that the Plaintiff did not suffer from varicose veins and that losing weight would help with his condition. (Id.) Moreover, the ALJ noted that elastic stockings should be worn during the day and that Dr. Fechner suggested that elevation of the legs would help the swelling. (Id.)

The ALJ then reiterated her reliance on Dr. Fechner's testimony, that the Plaintiff "generally could perform the demands of sedentary work." (Tr. 21.) The ALJ noted that although the consultative examining doctor appeared to find that the Plaintiff could only perform a reduced range of sedentary work, "Dr. Fechner testified that he [did] not agree with many of the limitations that the doctor gave; he [did] not find that they are borne out by the record, or by the doctor's own clinical findings." (Id.)

Finally, the ALJ noted that she did not "give any weight to the opinion of treating physician Dr. Patel who opined that the [Plaintiff] cannot perform full range of sedentary work," stating that Dr. Patel's opinion was "not supported by evidence of record." (Id.)

Moving on to step five, the ALJ found that the Plaintiff was not able to perform any past relevant work. (Id.) However, considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there existed a significant number of jobs in the national economy that the Plaintiff could perform. (Id.) The ALJ cited vocational expert Rocco Meola, who found that under the residual functional capacity assessment, the claimant could perform jobs as a "compact assembler, document prep worker, final assembler, scale operator, hand mounter, and order clerk." (Tr. 22.) Mr. Meola testified that there were approximately 1,000 such jobs available in the regional economy and approximately 35,000 in the national

economy. (Id.) The ALJ found this to be a "significant number" of jobs. (Id.) The ALJ also addressed certain additional more stringent limitations mentioned during the hearing, but did not find them to be applicable under the record. (Id.)

In conclusion, the ALJ found the Plaintiff to be "not disabled" as defined under the Social Security Act. (Id.)

**B.    Analysis**

Plaintiff asserts that the ALJ's decision is incorrect for several reasons. Plaintiff first argues that the decision fails to acknowledge many of his "severe" impairments at step two. Next, Plaintiff asserts that the ALJ failed to consider the combination of his impairments for comparison with the listings and that she ignored the impact of Plaintiff's obesity. Third, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence and does not properly consider his subjective complaints. Finally, Plaintiff claims that the government did not adequately meet its burden at step five and failed to show that Plaintiff is able to perform other jobs in the economy.

i.    The ALJ Failed to Adequately Explain Her Findings of Only Two Severe Impairments Under Step Two.

The ALJ found, at step two, that the Plaintiff suffered from "obesity, and chronic thrombophlebitis." (Tr. 17.) The ALJ proceeded to summarize the Plaintiff's medical history, mentioning Plaintiff's diagnosis with "superficial phlebitis, hypertension, hypertensive cardiovascular disease, and chronic obstructive pulmonary disease" (Exhibit 1F); "chronic venous insufficiency and hypertension" (Exhibit 3F); "hypertension, atypical chest pain, peripheral edema in lower extremities" (Exhibit 8F); "alcohol dependence (in sustained full remission), dysthymic disorder, history of COPD, superficial phlebitis, hypertension, and hypertensive cardiovascular disease" (Exhibit 9F); and "uncontrolled hypertension, atypical

chest pain, shortness of breath (unknown etiology) and status post thrombophlebitis by history" (Exhibit 12F). (Tr. 17-18.)

The ALJ then summarized the testimony of the Plaintiff's friend and roommate, Karen Grier Young, who testified that she did not believe the Plaintiff is able to work "because of persistent swelling of his legs and feet." (Tr. 18.) Young also testified that she believed the Plaintiff is depressed but that he had no insurance and did not take any prescription medication for the condition. (Id.) Young further described the Plaintiff's financial situation. (Id.) She also mentioned that the Plaintiff sits with his feet up during the day, sometimes does not want to eat, and becomes short of breath. (Id.) Finally, she mentioned that the Plaintiff had recently tried to work on a sanitation truck, but was unable to work for more than one day due to physical constraints. (Tr. 19.) The ALJ does not explain why she found that Plaintiff only suffered from two severe impairments: obesity and chronic thrombophlebitis. The Plaintiff argues that his hypertension, venous insufficiency, and left ventricle hypertrophy should not have been dismissed by the ALJ. (Pl.s' Br. 15-16.)

The Commissioner argues that while Dr. Thalody diagnosed Plaintiff with hypertension, it was noted in the diagnosis that the condition was controlled with medication. (Def.'s Br. 10, Tr. 205.) Moreover, the Commissioner points to a duplex venous sonography taken on May 29, 2007 as evidence that there was no "deep venous thrombosis or venous insufficiency." (Tr. 216.) Finally, the Commission concludes that "[a]s there is no objective evidence of any corresponding restriction or limitation, Plaintiff's claim that he was functionally limited by chronic venous insufficiency and left ventricular hypertrophy[] should be rejected." (Def.'s Br. 11.)

However, this Court "is not empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d at 1182; see also Palmer

v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa 1998) ("A district court cannot conduct *de novo* review of the Commissioner's decision or re-weigh the evidence of the record.")  As such, because the fact-finder in this case, the ALJ, did not sufficiently explain why she rejected the remaining diagnoses as severe impairments, this Court cannot offer any meaningful judicial review.  See Wilson v. Astrue, No. 08-00007, 2009 U.S. Dist. LEXIS 24326 (W.D. Pa 2009 (remanding the case because the ALJ failed to "articulate adequately," at step two, his reasons for discounting certain evidence in favor of others).  This Court cannot take the objective evidence presented in the Commissioner's brief and review it de novo.  Thus, the case must be remanded for the ALJ to provide a more meaningful analysis at step two.

      ii.      The ALJ Adequately Considered the Combined Effect of Obesity with Chronic Thrombophlebitis at Step Three.

While obesity is not a listed impairment, this does not mean that it should not to be considered as a source of disability.  In fact, the Commissioner promulgated SSR 00-3p, 2000 SSR LEXIS 5 to explain that while obesity would no longer be automatically designated as a listed impairment, "[w]e will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment."  See also Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (2009).  Moreover, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing."  SSR 00-3p, 2000 SSR LEXIS 5.  Hence, the Third Circuit concluded in Diaz that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step."  557 F.3d at 504.

In this case, the Court finds that the ALJ considered the effects of obesity on this particular Plaintiff. In particular, the ALJ stated that she will "evaluate each case based on the information in the record. Thus, obesity will be fully considered in the context of the overall record evidence in making this decision." (Tr. 19.) Furthermore, the ALJ noted Plaintiff's obesity and his weight several times throughout the decision. (Tr. 13, 14, 17.) In one instance, the ALJ referenced Dr. Fechner's observation that Plaintiff's swelling would be alleviated were he to lose some weight, stating that "he is exogenously obese." (Tr. 14.) Moreover, at step two, the ALJ concluded that Plaintiff's obesity is a severe impairment. (Tr. 17.) Therefore, the ALJ properly considered Plaintiff's obesity when making her decision. As such, the Court affirms the ALJ's analysis of the combined effect of obesity with Plaintiff's other impairments at Step Three.

    iii.    The AJL Did Not Adequately Explain her Reasoning for Relying so Heavily on Dr. Fechner's Testimony in Reaching her Decision at Steps Three and Four.

In reaching her decision at step three, the ALJ summarized in one paragraph her reason for doing so. (Tr. 19.) Namely, she stated that "[i]n Dr. Fechner's opinion, the claimant's impairment did not meet or equal the listings of the Commissioner singly or in combination." (Tr. 19.) The ALJ also pointed out that the Plaintiff's "pulmonary function test in May of 2007 and an examination that showed the [Plaintiff] had massive edema in both legs in February of 2007" served as evidence of the severity of the Plaintiff's conditions. (Id.) However, the ALJ once again relied on Dr. Fechner, who stated that "there was nothing in the record at all after June of 2007 to show the claimant's condition since the findings in the late winter and spring of 2007." (Id.)

Similarly, during step four of her analysis, the ALJ relies mainly on Dr. Fechner's opinion. (Tr. 19-21.) The ALJ only references two reports from other physicians: one Dr.

17

Gluckshow's report from October 2007, which showed no evidence of edema; the second is the opinion of Dr. Patel, whose opinion the ALJ decided to give no weight, as she explained that "[Dr. Patel's] opinion is not supported by evidence of record." (Tr. 21.) There was no further analysis as to why Dr. Patel's opinion was not supported by evidence of the record or why the ALJ chose to rely on Dr. Fechner's testimony as opposed to Dr. Patel's medical opinion when the two were contradictory. (Id.)

It has been well established that "[a]n administrative law judge cannot pick and choose parts of a physician's opinion without providing specific reasons for rejecting other parts." Wilson, 2009 U.S. Dist. LEXIS 24326, at *40 (holding that the ALJ did not explain "contradictory evidence" and remanding the case in order for the "ALJ to explain adequately his findings of severity in light of all the pertinent medical evidence and if evidence is rejected, adequately explain his reasons for the rejection"); see also Fetters v. Astrue, No. 07-256J, 2009 U.S. Dist. LEXIS 18346, at *10-11 (W.D. Pa., Mar. 11, 2009); Ward-White v. Astrue, No. S-07-1616 GGH, 2009 U.S. Dist. LEXIS 18088, at *20 (E.D. Ca., Mar. 10, 2009). In the current case, this Court finds that the ALJ did not adequately explain her heavy reliance on the testimony of Dr. Fechner and her rejection of contrary medical opinions by others doctors who performed tests on the Plaintiff. As such, this case must be remanded for the ALJ to give a more thorough analysis of the medical opinions of all of the doctors on the record and adequately explain why she gave more weight to the opinions of some as opposed to others.

With respect to Plaintiff's subjective complaints, the ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 20.) An ALJ's credibility determination is entitled to substantial deference on

appeal. See Izzo v. Comm'r of Soc. Sec., 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision."). It is Plaintiff's burden to establish that his subjective complaints are substantiated by medical evidence. Pearson v. Barnhart, 380 F. Supp. 2d 496, 508 (D.N.J. 2005). As discussed, in this case, the ALJ did not provide an adequate explanation for the rejection of medical opinions by doctors other than Dr. Fechner, whose findings may have been consistent with Plaintiff's subjective complaints. Thus, the Court remands on this issue for the ALJ to consider the medical opinions of all of the doctors on the record when determining the Plaintiff's credibility.

  iv. The Commissioner Met its Burden at Step Five.

  Plaintiff argues that the ALJ should have found that there are no jobs in the national economy that Plaintiff could perform because Dr. Fechner testified that Plaintiff had to elevate his legs during the work day. However, as Defendant argues, Dr. Fechner did not in fact state the Plaintiff must elevate his legs throughout the work day. (Def.'s Br. 12.) In contrast, Dr. Fechner stated that Plaintiff "would not need to raise his legs during that eight-hour period." (Tr. 74.) Therefore, based on the hypothetical offered by the ALJ, the vocational expert found that an individual with Plaintiff's nonexertional limitations would be able to perform a significant number of jobs in the national economy. (Tr. 21-22.) Thus, the ALJ's finding at step five is affirmed.

## V. __CONCLUSION__

  For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part and remanded in part.

An appropriate Order accompanies this Opinion.

Dated: April 30, 2013

HON. CLAIRE C. CECCHI
United States District Judge